May it please the Court, I'm Matt Adams with Northwest Immigrant Rights Project for the petitioner Mr. Perez and I'll seek to reserve one minute for rebuttal. Sure. The respondent argues in both the brief and the 28-J letter to the Court that there's no evidence in the record to indicate that Mr. Perez was stopped due to his Hispanic appearance. The respondent merely reasserts the same statement and the same plain error that was made by the immigration judge. Well, I thought the factual finding by the Court was that his Hispanic appearance was not the sole reason for the stop, isn't that what the immigration judge found? The immigration judge stated in her decision and I quote, there is no evidence the questions arose due to the respondent's outward appearance as Hispanic. But wasn't she responding to your argument that the sole reason that he was stopped was the impermissible race reason? We certainly, in our motion to suppress, allege that the basis of the stop was the Hispanic appearance. So don't, so is the standard of review then we must find that factual finding to be clearly erroneous? That is correct. And why is it clearly erroneous? As I stated, I believe the judge in her decision explicitly states that there is no evidence that the stop was based upon the Hispanic appearance. I think we're talking at cross purposes. You're trying to recast what the judge said in a different way than I'm reading what she said and what you asked her to decide. And I think for purposes of the legal question, it makes a difference. Going forward in an attempt to answer your question that even assuming that that's not the focus of the inquiry, the record of the deportable alias, which is the report written up by the arresting officer and lists the factors for which he decided to stop Mr. Perez in placement and removal proceedings, lists four factors. The first state that Mr. Perez appeared Hispanic. Second, that he appeared lost. And third, that he failed to make eye contact. And fourth, that he was walking on a road in the city where they often find individuals who recently arrived by bus or train. And did the immigration judge in her findings credit all of those as factors that the Border Patrol agent took into account when he made the decision to stop your client? The immigration judge in her decision did not discredit any of those three other factors. Didn't she specifically credit the officer's testimony? Am I remembering? She did. And she did not discredit any of those factors, even though this court has already rejected one of the factors explicitly and criticized the other factor, the factor of being on a road where they find other individuals who have. But didn't the Supreme Court tell us in Erevizu that the standard by which we must judge these sorts of stops is the totality of the circumstances? So to the extent that prior United States authorities attempted to declare categorically that one particular factor may or may not be adequate, that's not the correct analysis, is it, counsel? I agree that it is the totality of the circumstances. But in order to look at the totality of the circumstances, I believe it's still appropriate to go down and individually look at the factors. And while some factors may have minimal significance, it is true that when taken together, they can provide reasonable suspicion. But the inquiry must still start with the individual factors and see if together the totality of the circumstance. I'd say this is very similar to this court's decision in Gonzales-Rivera, where they looked, one, at the fact that the officer had stated that Hispanic appearance was a factor, and then they reviewed the other factors. And in that case, and those factors were remarkably significant or remarkably similar to the factors in this case, that the persons in the car failed to look at them, that they were on a road that was known to have smugglers on it. That case falls into the category of pre-Eravizu cases, does it not, counsel, when we were applying a mode of analysis that the Supreme Court later told us was wrong? I don't believe that the Gonzales-Rivera court rejected or looked at it on an individual factor basis, rejecting totality of the circumstances. They simply started out individually examining the factors and seeing if in their totality they created a reasonable suspicion. If I may cite one paragraph from that decision, the court stated, the other factors that Wilson used to justify his decision to stop Gonzales had such a low probative value that no reasonable officer would have relied on them to determine whether there was a reasonable suspicion to make an investigative stop, and thus we must disregard them as a matter of law. But that is the problem, is that it's a subtle distinction, counsel, one that I certainly wrestle with in trying to analyze these cases, but the distinction is between a court declaring as a matter of law that a particular factor cannot be a component of reasonable suspicion, and a Supreme Court that reminds us that it is the totality of the circumstances taking into account all of the factors that the officer was confronted with, applying his experience as, in this case, a, what, 28-year senior border patrol agent in order to determine whether under Terry v. Ohio there is a reasonable suspicion to make the stop to question the individual. Isn't that what we're wrestling with here? Well, I agree there is a deferential standard in that you must look at the totality of the factors. Otherwise, there is absolutely no review that's available. How is it different from the divide-and-conquer approach that we used to employ, which the Supreme Court told us we shouldn't do in these cases? The Court has clarified that the detention must be based on specific and articulable factors. That's the starting point. And if we're then to say, but all we can do is look at the totality of the circumstances and we can't individually weigh those factors, it renders meaningless all the case law that declares that they must start with specific and articulable factors that give an objective and reasonable person's rights to reasonable suspicion. So what are the factors that you would consider that were articulated by the officer that are permissibly considered? In this case, the officer did not submit one factor that was valid for the basis. He did testify that your client appeared to him to be lost. He did state that he appeared to be lost. All right. And then he said that it is well known that Marine Drive is an area that frequently is used by illegal immigrants, undocumented aliens seeking to go across the border or whatever. So are those, as a matter of law, impermissible? If I may look at both of those factors. The Fourth Amendment prohibits an investigatory stop based upon a broad profile that fits law-abiding persons. Well, I understand that. But you said we have to look at the individual factors, so I'm looking at the individual factors. And are you saying that those are impermissible, as you say we have held that refusing to look or refusing to make eye contact, some of our cases, that is impermissible or that race is impermissible? I would not say that being lost is absolutely impermissible. Rather, in the context of this case, you have an officer who, when asked how he could tell Mr. Perez was lost, he admitted in court, he stated, and I will quote, that was just a feeling of mine. I mean, as far as no, he was not looking around like he was trying to see where he was, not physically. But to me, he appeared out of place in the area, end quote. Let's suppose, though, let's suppose, then, that we were to agree with you that, looking at the permissible factors that are ruled out as a matter of law, that it was an impermissible stop. Isn't the issue here whether it was an egregious Fourth Amendment violation, not just we're not just talking about an exclusionary rule? It is. So what do we do? What makes this egregious? The egregiousness comes from the fact that it is evident, when looked at these factors, and they're either lack of substance or that they've already been rejected by the court, that the only factor that a reasonable person could have relied upon was the Hispanic appearance in this case. And I would argue that's on all fours, once again, with Gonzales Rivera. There, in conclusion, the court said, the officer stopped Gonzales solely because of his ethnicity, and that the other alleged reasons for the stop were either fabricated or of such minimal probative value in determining whether Gonzales and his father looked suspicious, that no reasonable officer would have relied on them. Mr. Adams, what do I do with the fact that, at page 107, ER 281, your client admitted, in his testimony, that he was lost? He, two points on that, if I may. First of all, whether he admitted he was lost is irrelevant to why the officer stopped him, because the officer didn't look inside his mind, it was what was apparent to the officer. But doesn't that corroborate the officer's sight and his conclusion that Perez appeared to be lost? I mean, Perez says, yeah, I was lost. You can use the very same rationale to get to the end result here. You could say, well, I could tell that this person was undocumented, and so even though I used factors to stop him, this court has already rejected it. In the end, I was proven right, and that should be sufficient. The officer here admitted that he only felt that he was lost based upon intuition, and this court has specifically rejected it. And as to the other factor, where he was on that street, the officer admitted the reason that street is notorious is because they often find individuals who have recently arrived by bus or train. And yet, when asked about this in court, the officer admitted that the bus or train were not even scheduled to arrive yet at the point he was stopped. The passenger train, he also talked about the fact that that line is used by freight trains. The officer made no reference to the fact that he was suspicious that he might have arrived by freight train when he was asked about that at the hearing. And in fact, he admitted that Mr. Perez was not carrying any sack or backpack or any luggage or there's any other indication that he was traveling around. Mr. Adams, you argue that we should go to the specifics. And if we go full circle back to this issue of Hispanic, don't we find that the only probative evidence here at all on that issue comes from the agent himself? And he also testified that the stop was not based on race. He did testify that the stop was not based on race. But the very report that he created, the arresting record, I-213, stated as the very first factor that Mr. Perez appeared Hispanic and that he appeared lost. And also that he failed to make eye contact. Those were his list of factors. And so even if he later contradicts his own report and says, well, that wasn't really a factor, you have objective evidence in the record that contradicts what he's saying. Respondent argues that simply by the fact that he contradicted his report is enough to show that there's no evidence in the record. But if an item of impeachment is implicitly rejected when the fact finder credits the testimony of the witness, don't we have to review the testimonial in the light most favorable to the government on this point? There is certainly, in review of the factors presented here, I mean, you do have to present, you have to give substantial deference to the immigration judge who is making this credibility finding. She's listening to the officer's testimony. But substantial deference does not render complete deference to what she has to say. And given the lack of substance. Isn't your answer just another way of saying we should believe what's in the I-213 and not what the border patrol agent testified to? I would certainly submit that the I-213, the written record that was created by the officer at the time of the arrest, bears substantial weight. And should be given weight over his testimony when he later contradicts his own report several months later after he's realized that what he's done has been specifically rejected by the courts. Okay. You're over time. So I'll give you a minute for rebuttal. Thank you. Counsel, could you point me to the IJ's finding on the Hispanic, where she actually credited his testimony and rejected the Hispanic as being a factor? Yes. I'm sorry. You didn't get a chance to identify who you were. May it please the court. My name is Jennifer Pazner on behalf of the respondent. Thank you. Sorry. The immigration judge issues a written decision denying the motion to suppress the I-213. And that is in the record at 335 to 340, I believe. And on pages 339 to 340 in the section titled analysis. I have a different copy. There are two decisions. One is the written decision on the motion to suppress. And then one is the immigration judge's decision on removability. But the finding that's relevant to the motion to suppress is in the written denial of the motion to suppress. Specifically. And what's the date of that? The date is September 27th, 2004. Okay. Go ahead. And at the bottom of page 339, she describes the evidence in the case. And the last sentence of that page says, there's no evidence the questions arose due to the respondent's outward appearance as Hispanic. The initial confrontation took place in a public setting. And then she goes on to differentiate the circumstances of the stop compared to Oharagi. Where is the resolution of the I-213? I mean, the I-213, which is the contemporaneous document that he filled out, says, I approach Perez, who appeared to be Hispanic. Well, that's right. Where does the IJ address or grapple with that fact? Are we just supposed to ignore that document? No, I don't think so. But I suppose giving the benefit of the doubt to the petitioner, that particular document could be read two ways. Who appeared to be Hispanic could either be a descriptor of the petitioner's appearance or charitably could be viewed as a reason for the stop. If that was the only evidence in the record, that would be one thing. But the petitioner then had an opportunity during his removal hearing to question and cross-examine Officer Phillips. And during that hearing, he or his attorney asked Officer Phillips whether Hispanic appearance had played any role at all, and Officer Phillips replied that it did not. And then he went on to say that he had never stopped anybody because of their appearance. So I think the only way. Well, that's what he says. What would you expect him to say? Oh, yes, I routinely in my practice. I mean, we've had cases that have arisen in the circuit which arise out of stopping people at the border because they were Hispanic. I mean, it's almost human nature to think that if you're looking for illegal aliens, that someone's external appearance is going to be a factor. So if I come in and say, no, that isn't what I do, what he testified, actually, and the question posed to the officer was, did you stop him simply because he was Hispanic? And his answer was, I don't stop people simply because they're Hispanic. That doesn't rule out Hispanic as being a factor. I know. Actually, I would have to go back and look. I don't remember whether he was asked, did you stop him solely because of his Hispanic appearance or was Hispanic appearance, did that play any role? But I'd like to say two things. First, in the two cases in which this Court has applied the Fourth Amendment exclusionary rule to a civil immigration proceeding, in both cases, the officer did specifically testify that in one case it was Hispanic appearance or Haraji, it was a Nigerian-sounding name, that those factors did play a part. So whether you might think officers would admit it or not, in those two cases, which are the only two cases I believe on point, the officer did admit that this prohibited factor played a role. That's not the case here, which is why we 28-Jed the Second Circuit decision in Almeida-Amaral. I think that case hurts you. In fact, in that case, as I understand the Second Circuit, they say if there was some evidence of race, then that would have been impermissible. How can you say with this I-213 that there's not some evidence that there was, in fact, a racial factor? Why would he put it in the I-213? What's the relevance? As a descriptor, what he's doing in the I-213 is explaining the circumstances of the stop. He doesn't say he appeared to be Hispanic. Assuming that descriptor, what motivated the stop, I believe, is an assumption which is contradicted by his testimony during the hearing. Are you saying that that is not some evidence that race played a factor? Well, ultimately, my other point was that it would be irrelevant, and I'd like to go to the Supreme Court's decision in Lopez-Mendoza. The starting analysis is that the exclusionary rule should not apply in civil immigration proceedings, and the Supreme Court explains the high social cost of applying it. Now, in a sentence at the very end of the decision, it says, we do not decide whether an egregious violation of the Fourth Amendment would warrant application of the exclusionary rule. And in Gonzales-Rivera, this Court found that it was an egregious violation of the Fourth Amendment where Hispanic appearance played the only role. Now, the analysis it employed to get there, we submit, has been overruled to some extent by the Supreme Court's decision in Arvizu. Arvizu allows Border Patrol agents to take race into account? No, Arvizu says that it's improper to pick apart every reason given by an officer for a stop and analyze each factor separately, decide separately that each factor is impermissible, and so conclude, well. So the government's position is it's okay to use race as a factor, so long as they have other factors as well. So when you're down in Phoenix or you're down in the San Ysidro area of San Diego, it's okay to stop people based on their ethnicity or their race, as long as you have something else to go on besides that. No, that's not our position. Our position here first is that, first, there is no evidence in the record that Hispanic appearance played any role. Second, assuming there is evidence that Hispanic appearance played a role, then neither Gonzales-Rivera nor O'Haraji go to that analysis where Hispanic appearance played a role. And the analysis isn't whether or not it's right. It's whether under the Supreme Court's decision in Locos Mendoza it's egregious. And we would submit that when the Supreme Court says egregious, what it doesn't mean is a case where an officer perhaps had three, four, five, six, who knows how many legitimate reasons, and Hispanic appearance played a role, but not the only role. Three, five, or six legitimate reasons here. Well, here the officer gave three reasons. The location Mr. Perez was in, the fact that he appeared lost, and the fact that he avoided eye contact. Avoided eye contact has been held in this circuit not to be a credible factor. It has in Gonzales-Rivera. I would submit that the Supreme Court's decision in Arvizu, again, cast doubt on that analysis. Why? Why does it cast doubt? Because the court should not go through each factor. What it did in Gonzales-Rivera was it said it analyzed avoided eye contact on its own. Right. It does it in the context of saying citizens is like nervousness. People tend to have certain behavior characteristics which are so common that they don't signal anything. So what else do you have, officer? And that's the nature of the inquiry. So now it's gone to his intuition about his being lost and that he happens to be in an area that, in his experience, there are frequently people who are undocumented. Well, but under Arvizu, I believe the proper analysis, the court can't say that considered in, without looking at any of the other factors in every case, the fact that somebody avoided eye contact is not a permissible factor. It has to be considered along with the other factors. And the other factors here are the fact that Mr. Perez appeared lost. Now, the fact that he appeared lost and the fact that he avoided eye contact perhaps gives rise to reasonable suspicion where it otherwise might not, because one would expect somebody who appeared lost. Okay. And that's enough to outweigh then. So this is, these are the two factors. And on the hypothesis that I understand you don't concede is that there's evidence that Hispanic was one of the three. You're saying that those two factors are sufficient to overcome the fact that Hispanic is the first thing listed in the I-213? It's actually one of four factors. There are three legitimate, three other factors other than Hispanic appearance plus Hispanic appearance. Okay. Yes. If we reach that point, and, again, I have to say we don't concede that, but if we reach the point where there are three legitimate factors and then there's Hispanic appearance, first I would say that that's a set of circumstances that this Court has never addressed. That is not the situation in Gonzales-Rivera where the Court specifically and improperly, we would submit under AFISU, went through every other factor given by the officers, found them invalid, and then said Hispanic appearance was the only reason. We would submit in cases where Hispanic appearance is just one reason, that the Supreme Court's analysis in Lopez-Mendoza of the high social cost of applying the exclusionary rule in civil immigration proceedings means that this is not an egregious violation. The result of saying that this is an egregious violation is that there's no dispute that the petitioner is in this country illegally. He admitted it. That's true. There's no dispute that he and lots of people who are normal, everyday citizens and lawful permanent residents or residents who are here legally are Hispanic. Well, that's right. But what the Supreme Court said in Lopez-Mendoza is that the social cost of applying the exclusionary rule in deportation proceedings are both unusual and significant. The first cost is one that is unique to continuing violations of the law. Applying the exclusionary rule in proceedings that are intended not to punish past transgressions but to prevent their continuance or renewal would require the courts to close their eyes to ongoing violations of the law. Counsel, I don't understand. This is a Supreme Court that says you may not take race into account. The social cost of taking race into account in many, many contexts is too high. So what you're saying is it's okay for the government in its immigration enforcement to take race into account and then bolster their case by saying we can come up with some other reasons why in addition to race we took it into account. Well, I don't believe that's our position. First of all, in Brignone-Ponce, which I may have just mispronounced, I believe the Supreme Court addressed the situation where race or Hispanic appearance was the only reason. It's never said anything about civil immigration proceedings where, assuming for the purposes of argument, there are however many legitimate factors and then appearance is just one of many factors. I don't believe the Supreme Court has ever addressed that situation, and neither has this Court. Is your argument, maybe I misunderstood your argument, is your argument that the reason we don't want to be too quick to find egregious violations is that there's no question that this person is illegally present in the United States. If we invoke the egregious exception to the exclusionary rule in immigration cases, he's still here illegally even if we terminate the deportation proceedings against him, and that the court should not lose jurisdiction over the person when he doesn't have any right to be here?  I was pretty much just quoting from this. I mean, I believe the Supreme Court in Lopez-Mendoza fully explains both the benefits to applying the exclusionary rule in civil immigration proceedings and the costs, and one of the costs is that we all know the only thing this court could do if it found an egregious violation would be to terminate removal proceedings. That's where I thought you were going with the argument, which then leaves us with a person who's here illegally in the United States who's still here, and he doesn't have any right to be here. Well, that's right. And border patrol agents then, if we go the other direction, who can go ahead and stop people based on race, because the cost of leaving people who are here illegally is too great to impose any restraint on the police officers if they use race as a factor. That's the balance. Is that what you're saying? And it gets resolved not on whether or not it's a good thing or not to stop people because of their race, but whether you can then cobble together articulable other reasons in addition to race. Well, I believe that's misstating the record in this case. We're not talking about that. We're getting far away from the record. We're talking about the government saying exclusionary rules shouldn't be used in the immigration context because the cost of leaving some illegal alien in the country is too important, and it outweighs taking race into account. No, I'm saying exclusionary rule should not be used in this case because, based on the factors of this case, there's no egregious violation of the Fourth Amendment. Okay. But there might be a situation, to follow up on Judge Fischer's point, where if there was an egregious violation, we would turn him loose, even though the effect would be to leave in society a person who has no legal authority to remain. Well, yes, that's what this court found in Gonzales-Rivera and then in Orohiraji. Okay. All right. Thank you. Thank you. Thank you. I'll give you a couple of minutes since we've run well over time with the government. Thank you. First of all, if I may just address whether the phrase appeared Hispanic is a simple descriptor, as if that were the officer just noting the temperature, the weather that day. The very first fact he listed was that he appeared Hispanic, and he used the same exact language when he talked about that he appeared lost. It was first that he appeared Hispanic and then that he appeared lost. And I think if you look at the record of the portable alien farm, I-213, it defies trying to minimize that or chastise a simple descriptor. That report exists for the officer to justify both his stop and why he placed Mr. Perez in removal proceedings. What do we do with this? This may be so painfully obvious that the answer suggests itself, but he is Hispanic and he is from Mexico, and we can't do anything about the fact that he appears to be Hispanic. And it would be pretty apparent to anybody who looks at him that that is the case. So what do we do with that? I mean, we had the same problem in Erevisa, where the border patrolman could see when the guy was driving by in the van that it was a Hispanic family. I would argue that he appears to be Hispanic, but not everyone can say he appears to be from Mexico. If you go throughout the towns here in Washington, we have towns that are 90 percent Latino. We're no longer in a point in this country where you can say because someone appears Hispanic that there's a high probability that, one, they're not a citizen, or, two, that even if they're not a citizen, that they're not a lawful permanent resident. But I think the point that I thought I heard your opponent make was a descriptor here is no different from in another case you might be dealing with a white male adult or an Indian male adult, whereas here we have a Hispanic male adult. And once again, I would say that here you have the officer listing on his report of deportable alien the factors why he stopped him. The very first factor is that he appeared Hispanic. This is not simply an adjective he throws in to make his report longer. Your argument is not that every time a person who appears to be Hispanic is stopped, that is an impermissible race-based stop, is it? No. My argument is that a stop based upon Hispanic appearance pursuant to this court's holding is an egregious violation of that person's Fourth Amendment rights. Because of the fact that he's not? No. We have to go back to the question I guess we started your argument with, and that is a finding that it was the sole reason that he was stopped. That it was based on that, yes. And that's just like in Gonzales-Rivera where they cast aside these other reasons. And the only other point I would add is if we accepted this analysis that the totality of the circumstances by viewing it precludes looking at the individual factors, the exclusionary rule would only be left to cases where an officer openly admitted to egregiously violating the Constitution. Of course, the judge could have disbelieved the officer if she thought that the I-213 was more persuasive than his testimony. That is correct. And while this court renders substantial deference to the judge's decision, there must be a basis in the record for the judge's conclusions. Okay. I think we have the argument. Interesting case. Thank you. Thank you both, counsel, for the good argument. Case argued and submitted.
judges: Fisher, Tallman, Mills